UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMAR CARTER,

    Plaintiff,                      Civil Action No. 16-11105

        v.                        Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

## OPINION AND ORDER

Plaintiff Tamar Carter ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons discussed below, Defendant's Motion for Remand [Docket #20] is GRANTED, remanding the case to the administrative level for further administrative proceedings. Plaintiff's Motion for Summary Judgment [Docket #19] is DENIED.

## PROCEDURAL HISTORY

On July 19, 2013, Plaintiff applied for DIB and SSI, alleging disability as of January 1, 2013 (Tr. 148-149, 150-155). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on November 25, 2014 in Livonia, Michigan (Tr. 19, 35).

Administrative Law Judge ("ALJ") Mary Connolly presided. Plaintiff, represented by attorney Lindsey Fish, testified (Tr. 38-57), as did Vocational Expert ("VE") Han Tabsic (Tr. 57-59). On January 27, 2015, ALJ Connolly found Plaintiff not disabled (Tr. 19-29). On February 1, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed the present action on March 28, 2016.

## BACKGROUND FACTS

Plaintiff, born August 8, 1969, was 45 at the time of the administrative decision (Tr. 29, 148). She attended special education classes during high school before completing 12th grade (Tr. 211). Her application for benefits states that she worked previously as a clothes sorter at a thrift store, home care giver, housekeeper (hotel), production worker, and as a temporary worker (Tr. 211). She alleges disability as a result of schizophrenia, Carpal Tunnel Syndrome ("CTS"), and arthritis (Tr. 210).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in Taylor, Michigan with her sister (Tr. 38, 44). From 2001 to 2003, she worked for a packaging company in the receiving department inspecting parts (Tr. 38-39). The work was performed in the standing position and required "very light" lifting (Tr. 39). She had not worked since 2011 due to her physical and mental problems (Tr. 39). She was unable to sit or stand for long periods due to arthritis of the knees, CTS, and tendinitis (Tr. 40). She also had back and left shoulder problems (Tr. 40). She had not undergone surgery for those conditions (Tr. 40). She received weekly mental health treatment and a monthly

psychiatric review since a seven-day hospitalization in May, 2014 (Tr. 41-42). She currently took Prozac and Seroquel (Tr. 43). Her psychological improvement since beginning treatment had been slowed by the death of her mother (Tr. 43). She "heard voices" but did not know whether they were her "inner thoughts" or audio hallucinations (Tr. 44).

Due to arthritis, Plaintiff required a left knee replacement (Tr. 44). She experienced the left knee symptoms of pain, numbness, swelling, tingling, and multiple falls (Tr. 44). She experienced a lesser degree of right knee pain (Tr. 45). Despite nighttime knee pain, she was able to sleep well due to the use of Seroquel (Tr. 45). She also experienced shortness of breath and pain upon climbing stairs or walking long distances (Tr. 45). She was unable to walk for more than one block or sit or stand for even 30 minutes (Tr. 46-47). She experienced left shoulder pain since tearing the rotator cuff in 2011 (Tr. 47). She also underwent a heart catherterization (Tr. 48). She drank beer or wine and smoked marijuana on a regular basis (Tr. 50-51). She had been advised that her psychotropic medication would work better if she stopped smoking marijuana (Tr. 51). She was ordered to stop drinking during a 1999-2000 incarceration (Tr. 51). In 2013, she was jailed for 20 hours on suspicion of assaulting her step-daughter but was never charged (Tr. 52). Her driver's license was suspended in 2003 after she failed to pay traffic tickets (Tr. 52).

Plaintiff used a brace on her right hand for CTS (diagnosed in 2003) but experienced the condition in both hands (Tr. 54). She dropped items on a regular basis due to tingling and numbness (Tr. 55). She experienced difficulty sweeping but was able to wash dishes (Tr. 56). She also experienced leg and ankle swelling and maintaining focus (Tr. 55). She

avoided communicating with others in retail situations (Tr. 56). She had "bad days" three or four days a week at which time she did not want to get out of bed (Tr. 56). She did not "get along well with others" (Tr. 57).

**B. Medical Evidence**

### 1. Records Related to Plaintiff's Treatment[1]

A May, 2011 MRI showed a torn left meniscus with osteoarthritis changes (Tr. 281, 306). An MRI of the lumbar spine showed forminal narrowing at L5-S1 with "very minimal" effect on the exiting nerve roots (Tr. 282, 305). February, 2012 nerve conduction studies showed severe bilateral CTS and left-sided mild ulnar sensory neuropathy (Tr. 309, 381). The same month, treating notes by Priti Bhardwaj, M.D. state that Plaintiff took Vicodin for shoulder pain (Tr. 318). The following month, an MRI of the left shoulder showed moderate tendinosis of the rotator cuff (Tr. 310, 382). In April, 2012, Ramsey Hammoud recommended steroid injections for the rotatory cuff condition (Tr. 313).

Dr. Bhardwaj's November, 2012 records note Plaintiff's report of ongoing low back pain (Tr. 343). The treatment records also note normal muscle strength in all extremities (Tr. 343, 347). January 2, 2013 records by Dr. Bhardwaj state that Plaintiff was in no acute distress (Tr. 351). In March, 2013, Plaintiff was urged to quit smoking (Tr. 359). In June, 2013, Dr. Bhardwaj prescribed Abuterol for asthma (Tr. 367). She again urged Plaintiff to

---

[1] Treatment for conditions unrelated to the arguments for remand have been reviewed in full, but are omitted from the present discussion. Records pertaining to Plaintiff's condition significantly predating the alleged onset disability date of January 1, 2013 are discussed for background purposes only.

quit smoking (Tr. 367).

In January, 2014, Dr. Bhardwaj observed back spasms (Tr. 455). Dr. Bhardwaj's March, 2014 records note bilateral knee tenderness (Tr. 447). In April, 2014, Dr. Bhardwaj again observed lower back spasms (Tr. 443). In May, 2014, Plaintiff was hospitalized for five days after reporting "vague suicidal thoughts" (Tr. 469). Over the course of the hospitalization, Plaintiff received individual and group therapy and was prescribed Prozac and Seroquel (Tr. 469). Upon discharge, she exhibited good judgment and reduced symptoms of anxiety and depression (Tr. 469). She was assigned a GAF of 55[2] (Tr. 469). Treatment records note a history of psychotropic medication non-compliance (Tr. 471). Plaintiff reported "good health" (Tr. 472).

In July, 2014, psychiatrist Madhumalti Bhavsar, M.D. noted Plaintiff's report that she wanted a psychiatric evaluation for the purpose of obtaining disability benefits (Tr. 399). 1990s for robbing a bank (Tr. 399-400). She did not exhibit memory problems (Tr. 400). Dr. Bhavsar assigned her a GAF of 60 (Tr. 401). In August, 2014, Dr. Bhavsar noted that Plaintiff was not in any acute distress and was fully oriented with a normal gait (Tr. 396). He directed Plaintiff to continue the use of Seroquel and Prozac (Tr. 396). Dr. Bhardwaj's records from the same month state that Plaintiff received a Lidocain injection to the left knee (Tr. 421). October, 2014 treating records by Garden City Medical Center state that Plaintiff

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ("*DSM–IV–TR*"), 34.

was scheduled for a heart catheterization the same month (Tr. 386).

## 2. Non-Treating Records

In September, 2011, Leonidas Rojas, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of hypertension, asthma, CTS, and low back and left knee pain[3] (Tr. 293-294). Dr. Rojas noted that Plaintiff used crutches and had difficulty arising from a sitting position due to recent knee surgery (Tr. 295). A neurological and musculoskeletal examination was unremarkable (Tr. 296-297). Dr. Rojas noted the presence of obesity and mild CTS (Tr. 296). Plaintiff exhibited a slightly reduced range of lumbar spine motion (Tr. 299).

The same month, psychiatrist Ibrahim Youssef, M.D. performed a psychiatric evaluation on behalf of the SSA, noting Plaintiff's report of a diagnosis of depression after a 1991 suicide attempt (Tr. 302). Plaintiff reported the current symptoms of anger, sadness, social isolation, and excessive sleep (Tr. 302). She admitted that she was fired from her job as a production worker after she failed to show up to work (Tr. 302). She reported self-medicating with alcohol (Tr. 302). She reported that she was able to do her own cooking and cleaning (Tr. 303). She exhibited a normal memory and good concentrational abilities (Tr. 303). Dr. Youssef assigned Plaintiff a GAF of 50 to 55 due to alcohol and cannabis abuse[4]

---

[3]This examination predates the current application for benefits by over a year and was apparently ordered in connection with an earlier application.

[4]A GAF score of 41 to 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

(Tr. 304).

## C. Vocational Expert Testimony

VE Han Tabsic classified Plaintiff's former work as a inspector and hand packager as unskilled and exertionally light[5] (Tr. 58). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

> [L]imited to sedentary work; would further limitation of frequent, meaning two-thirds of the time but not constant use of her hands bilaterally; mild concentration, pace, and persistence limitations; off task about five percent; and no work with the public (Tr. 59).

In response, the VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the work of a sorter (2,500 in the metropolitan Detroit area); inspector (1,200); and addressing clerk (1,000) (Tr. 59). The VE testified that if Plaintiff experienced moderate limitation in "concentration, pace, and persistence" causing her to be off task 10 percent of the day; were required to lie down "with legs outstretched at least twice a day for about 30 minutes;" and, required four absences a month, all substantial gainful employment would be precluded (Tr. 59).

## D. The ALJ's Decision

---

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "degeneration of the lumbar spine; history of left meniscal tear, status-post two surgeries; right [CTS]; asthma; obesity; affective disorder/major depressive disorder; and polysubstance use" but that none of the conditions met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22). She found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 22-23). The ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> [S]edentary work . . . but with the following additional limitations: frequent, but not constant, use of the hands bilaterally; mild concentration, persistence, and pace limitations such that the claimant would be off task up to five percent of the workday; and no work with the public (Tr. 24).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could work as a sorter, inspector, and address clerk (Tr. 28).

The ALJ discounted Plaintiff's alleged degree of limitation, noting that despite a diagnosis of asthma, Plaintiff continued to smoke (Tr. 25). The ALJ cited an MRI study showing foramina narrowing "with very minimal effect on the exiting nerve roots" (Tr. 25). She noted that Plaintiff exhibited a full range of lumbar spine motion at a September, 2011 examination (Tr. 25). The ALJ noted, in effect, that Plaintiff's condition was stable when she was took her medication on an as-prescribed basis (Tr. 26-27). She observed that the medical transcript did not support Plaintiff's claim that she was required to recline and/or elevate her legs on a regular basis (Tr. 27).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

On July 29, 2016, Plaintiff, proceeding *pro se,* filed a motion for summary judgment, challenging the administrative finding that she was not disabled. *Plaintiff's Brief, Docket #19,* Pg ID 584. In support of her position, she states that she is prevented from working due to arthritis in both knees and arms; obesity; asthma, a left shoulder rotator cuff tear; bipolar disorder; hypertension and hyperlipidemia; bilateral CTS; and back and neck problems. *Id.* at 1-2. She adds that her work abilities are compromised by constant pain and the medication side effect of drowsiness. *Id.* In response, on September 14, 2016, Defendant filed a motion for remand for further administrative proceedings. *Motion for Remand, Docket #20,* Pg ID 593. Defendant states that a remand is warranted so that the ALJ may "obtain evidence from a medical expert to clarify whether Plaintiff's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id.* at 2. On September 29,

2016, Plaintiff declined to stipulate to a remand, stating that she wanted the case to proceed in this Court "as planned." *Docket #22.*

Plaintiff's refusal to stipulate to a remand for further proceedings is construed as a request for a remand for an award of benefits under 42 U.S.C. 405(g). The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." However, a remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.HHS,* 17 F.3d 171, 176 (6th Cir. 1994).

The Court agrees with Defendant that a remand for further fact-finding rather than an award of benefits is appropriate. The medical transcript does not contain a treating, consultative, or non-examining assessment of Plaintiff's work-related abilities for the period subsequent to the January 1, 2013 alleged onset of disability. A remand for further development of the record would allow the ALJ to make a more reasoned determination of whether an award of benefits is appropriate. My own review of the record also shows that the administrative decision includes contradictory findings. While the ALJ found that Plaintiff experienced moderate limitation in concentration, persistence, or pace (Tr. 23), the RFC states that the concentration, persistence, and pace limitation is only *mild* ( Tr. 24)(emphasis added). A remand would also permit the ALJ to resolve these inconsistencies.

However, Plaintiff has not presented "overwhelming" evidence allowing this Court to conclude that she is incapable of even a limited range of sedentary work. *Faucher*, 17 F.3d at 176 (*citing Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* Record evidence of a normal gait, good muscle strength in all extremities, and only intermittent knee and back problems, for example, support the finding that Plaintiff could perform sedentary work. On the other hand, the evidence allows for the possibility that upon remand, the ALJ could find that one or a combination of Plaintiff's medically determinable conditions renders her disabled. Accordingly, a remand for benefits prior to the resolution of the unresolved factual issues would be premature.

## **CONCLUSION**

For these reasons, Defendant's Motion for Remand [Docket #20] is GRANTED, and the case is remanded to the administrative level for further administrative proceedings under the fourth sentence of § 405(g). Plaintiff's Motion for Summary Judgment [Docket #19] is DENIED.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 30, 2017

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2017, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen